UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON R. SULLIVAN,

          Plaintiff,

   v.

WILLIAM AURICH et al.,

          Defendants.

Case No. C21-5433-TSZ-SKV

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff is a state prisoner who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. At all times relevant to this litigation, Plaintiff was confined at Clallam Bay Corrections Center ("CBCC"). *See* Dkt. 20 ¶ 3. Plaintiff has sickle cell anemia and suffers from acute sickle cell pain crises, which he has historically treated with oxycodone. *See id.* at ¶¶ 18, 30. Shortly after being transferred to CBCC, Plaintiff suffered an acute pain crisis, but was denied oxycodone because it had not yet been prescribed to him by a CBCC medical provider. *Id.* at ¶¶ 27–32. As a result, Plaintiff's pain crisis continued for several days without the medication. *Id.* at ¶¶ 27–49. While Plaintiff was subsequently prescribed oxycodone, *see*

REPORT AND RECOMMENDATION - 1

1   Dkt. 33 at 7, he experienced two additional acute pain crises during which he alleges he did not
2   receive the medication in accordance with his prescription. Dkt. 20 ¶¶ 57–63.
3         On June 9, 2021, Plaintiff filed this lawsuit against several CBCC medical and
4   correctional employees, alleging their refusal to provide him with oxycodone during his acute
5   sickle cell pain crises violated the Eighth Amendment's prohibition on cruel and unusual
6   punishment. *See* Dkt. 1-1. After answering Plaintiff's Amended Complaint, Defendants
7   William Aurich and Eric Nelson filed the present Motion for Judgment on the Pleadings,
8   alleging Plaintiff's Amended Complaint fails to state a plausible claim for relief against them and
9   asking the Court to dismiss them from this lawsuit. *See* Dkt. 27. Having thoroughly considered
10  the parties' briefing and the relevant record, the Court finds that Defendants' Motion, Dkt. 27,
11  should be GRANTED for the reasons explained herein.
12        II.    BACKGROUND
13        Plaintiff was taken into custody by the Washington State Department of Corrections
14  ("DOC") on or around March 24, 2020. *See* Dkt. 20 ¶ 17. At that time, Seattle & King County
15  Public Health ("SKCPH") prepared a medical report detailing Plaintiff's medical history and list
16  of current medications. *Id.* This report indicated that Plaintiff suffers from sickle cell anemia
17  and takes oxycodone for pain management during acute sickle cell pain crises. *Id.* at ¶ 18; Dkt.
18  33-1 at 4.
19        On June 3, 2020, Plaintiff was transferred to CBCC. Dkt. 20 ¶ 24. That same day, a
20  DOC employee conducted Plaintiff's medical intake screening and documented his sickle cell
21  anemia. *Id.* Shortly thereafter, on June 5, 2020, Plaintiff suffered an acute sickle cell pain crisis
22  and twice declared a medical emergency to CBCC correctional officer Defendant Jerry Saunders.
23  *Id.* at ¶¶ 7, 27–28. In response, Defendant Saunders brought Defendant Julia Keegan, a

registered nurse employed by CBCC, *id.* at ¶ 10, to Plaintiff's cell. *Id.* at ¶ 29. Plaintiff told Defendant Keegan that he typically takes oxycodone to manage his pain during acute pain crises. *Id.* at ¶ 30. Because there was no order for oxycodone in his medical chart, Defendant Keegan did not give him the medication. *Id.* at ¶¶ 30–32. Instead, Defendant Jackie Peterson, a certified physician assistant employed by CBCC, *id.* at ¶ 9, gave Plaintiff ibuprofen for his pain. *Id.* at ¶ 33.

Plaintiff's pain continued into the next day and he twice declared a medical emergency to CBCC correctional officer Defendant Shawn Clay. Dkt. 20 ¶¶ 6, 38–39. Defendant Clay responded by bringing Defendant Keegan back to Plaintiff's cell, but Defendant Keegan still did not give Plaintiff any oxycodone. *Id.* at ¶ 40. Instead, she informed him that he would be seen by a doctor on June 8, 2020. *Id.* at ¶ 46. Plaintiff continued taking ibuprofen to manage his pain, and on June 7, 2020, he filed an emergency grievance with CBCC. *Id.* at ¶¶ 47–48. Plaintiff did not see a doctor on June 8, 2020. *Id.* at ¶ 49. Instead, on June 9, 2020, Plaintiff saw CBCC's Facility Medical Director, Defendant William Aurich, *id.* at ¶ 4, who prescribed Plaintiff oxycodone to be taken as needed to manage his acute sickle cell pain crises.[1] Dkt. 33 at 7.

On July 19, 2020, Plaintiff suffered another acute sickle cell pain crisis. Dkt. 20 ¶ 57. He declared a medical emergency to Defendant Wei Weller, a registered nurse employed by CBCC. *Id.* at ¶¶ 11, 57. Plaintiff informed Defendant Weller that he should be given oxycodone to manage his pain, in accordance with Defendant Aurich's instructions in Plaintiff's medical chart. *Id.* at ¶ 57. In response, Defendant Weller informed Plaintiff that Defendant Aurich was

---

[1] Plaintiff's Amended Complaint does not discuss this June 9, 2020, medical encounter with Defendant Aurich; however, it does refer to "Defendant William Aurich's instructions, which should be in [Plaintiff's] medical chart," when detailing one of Plaintiff's subsequent acute pain crises. Dkt. 20 ¶ 57. Further, Plaintiff recounts the encounter in his Opposition to Defendants' Motion. *See* Dkt. 33 at 7. Given Plaintiff's *pro se* status and his acknowledgment of the encounter in his Amended Complaint and Opposition, the Court considers it as though it were pleaded in Plaintiff's Amended Complaint.

REPORT AND RECOMMENDATION - 3

1  not there. *Id.* Defendant Keegan subsequently came to Plaintiff's cell and apologized for
2  Defendant Weller's lack of familiarly with Plaintiff's condition. *Id.* at ¶ 58. She also instructed
3  Plaintiff to follow a specific procedure for obtaining his medication when needed. *Id.* at ¶ 59.
4  While Plaintiff followed the recommended procedure the following day, he alleges he did not
5  receive his medication. *Id.* at ¶ 60.

6      Plaintiff suffered two more acute sickle cell pain crises in April 2021 and June 2021.
7  Dkt. 20 ¶¶ 62–63. During the April pain crisis, Plaintiff alleges Defendant Alvin Massenburg, a
8  certified physician assistant employed by CBCC, *id.* at ¶ 5, only gave him his medication twice a
9  day, instead of three times a day. *Id.* at ¶ 62. During the June crisis, Plaintiff alleges there was a
10 delay in him receiving his medication, which contributed to his pain. *Id.* at ¶ 63.

11     On June 6, 2021, after using CBCC's prisoner grievance procedure to try and resolve his
12 claim, *see* Dkt. 1-2, Plaintiff filed this lawsuit against Defendants, alleging their deliberate
13 indifference to his medical needs violated the Eighth Amendment's prohibition on cruel and
14 unusual punishment, and seeking compensatory and punitive damages from each Defendant. *See*
15 Dkt. 1; Dkt. 1-1 ¶¶ 65–67. On July 19, 2021, Plaintiff filed an Amended Complaint in this
16 action, *see* Dkt. 20, naming an additional Defendant, Defendant Massenburg, and increasing his
17 damages demand. *Id.* at ¶¶ 69–70. After answering the Amended Complaint, Defendants
18 Aurich and Nelson moved for judgment on the pleadings under Federal Rule of Civil Procedure
19 12(c), alleging Plaintiff's claims against them should be dismissed because Plaintiff has failed to
20 state a claim that is plausible on its face and they are entitled to qualified immunity. *See* Dkt. 27.
21     ///
22     ///
23     ///

III.   DISCUSSION

A.   Legal Standard

In considering a Rule 12(c) motion for judgment on the pleadings,[2] the Court must determine whether the complaint alleges factual allegations stating a claim for relief that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While detailed factual allegations are not necessary, a complaint must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555. Dismissal is appropriate if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Vague and conclusory allegations are subject to dismissal. *See Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

In considering a motion for judgment on the pleadings, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted). *Pro se* prisoner complaints are held to "less stringent standards than formal pleadings drafted by lawyers," and courts construe such pleadings "liberally" to "afford

---

[2] Courts review Rule 12(c) motions under the standard governing Rule 12(b)(6) motions. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *St. Paul Ramsey Cty. Med. Ctr. v. Pennington Cty., S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) (citing cases). Thus, while the cases set forth herein discuss the standard governing Rule 12(b)(6) motions, they are equally applicable to Rule 12(c) motions.

REPORT AND RECOMMENDATION - 5

the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted).

B. <u>Materials Considered</u>

As a general matter, the Court may not consider materials beyond the complaint in ruling on a Rule 12(c) motion.[3] *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Exceptions to this rule include material properly submitted as a part of the complaint and documents not physically attached to the complaint if the contents are alleged in the complaint and no party questions the documents' authenticity. *Id*. In addition, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Id*. at 688–89. Specifically, a court may take judicial notice of a fact "not subject to reasonable dispute" because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Plaintiff attaches and refers to a number of documents in his Opposition to Defendants' Motion: (1) a letter from the DOC's Chief Nursing Officer responding to a request for information from Plaintiff; (2) the DOC's Health Screenings and Assessments Policy ("DOC Policy 610.040"); (3) the medical report prepared by SKCPH at the time of Plaintiff's incarceration detailing his medical history and list of current medications; (4) the medical intake screening document CBCC prepared when Plaintiff was transferred to its facility; and (5) a number of primary encounter reports prepared by (of relevance) Defendants Julie Windle, Keegan, Aurich, and Weller following medical encounters with Plaintiff. *See* Dkt. 33 at 12–23; Dkt. 33-1. The contents of the DOC Policy 610.040, the SKCPH medical report, the CBCC medical intake screening document, and the primary encounter reports prepared by Defendants

---

[3] Where matters outside the pleadings are presented and not excluded by the Court, the motion must be treated as one for summary judgment and disposed of under Rule 56. Fed. R. Civ. P. 12(d).

REPORT AND RECOMMENDATION - 6

1  Windle, Keegan, and Weller are all alleged in Plaintiff's Amended Complaint. *See* Dkt. 20 ¶¶
2  15–19, 22–23, 25–26, 29–33, 35, 40, 43–44, 46, 54–57.  Further, Defendants do not object to the
3  Court's consideration of these materials, nor do they question their authenticity.  Given this, the
4  Court will consider these materials as appropriate herein.  *See United States v. Ritchie*, 342 F.3d
5  903, 907–09 (9th Cir. 2003).

6  Defendants also do not object to the Court's consideration of the letter from the DOC's
7  Chief Nursing Officer or the remaining primary encounter reports prepared by Defendant Aurich
8  and other CBCC employees.  These materials, however, are not referred to or described in
9  Plaintiff's Amended Complaint, nor are they matters of public record of which the Court can
10 properly take judicial notice.  The Court therefore declines to consider these documents herein.

11     C.    <u>Defendants' Motion for Judgment on the Pleadings</u>

12 Defendants Aurich and Nelson seek dismissal from this case, arguing Plaintiff's
13 Amended Complaint fails to state a plausible § 1983 claim for relief against them because it
14 contains only conclusory allegations and does not contend that either Defendant was actually
15 involved in the constitutional violations alleged by Plaintiff.[4]  Dkt. 33 at 4–7.

16 To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by
17 the Constitution and laws of the United States, and must show that the alleged deprivation was
18 committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)
19 (citations omitted).  There is no vicarious liability under § 1983, meaning government officials
20 are only liable when their own actions cause a constitutional violation.  *OSU Student All. v. Ray*,
21 699 F.3d 1053, 1069 (9th Cir. 2012); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A

---

[4] Alternatively, Defendants argue they are entitled to qualified immunity.  Dkt. 33 at 7–8.  Because the Court finds the Amended Complaint fails to state a plausible claim for relief against Defendants Aurich and Nelson, it does not address their arguments on qualified immunity.

REPORT AND RECOMMENDATION - 7

government official causes a constitutional violation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [the actor] is legally required to do that causes the deprivation of which complaint is made"; or (2) "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (citation omitted).

When a § 1983 lawsuit is predicated on violations of the Eighth Amendment, a plaintiff must allege facts sufficient to find that the defendant has deprived the plaintiff of his or her Eighth Amendment rights. A prisoner pursuing an Eighth Amendment claim alleging inadequate medical care by a prison official must demonstrate that (1) the prisoner had a "serious medical need"; (2) the prison official was deliberately indifferent to that need; and (3) as a result, the prisoner faced significant risk of injury or harm. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785–86 (9th Cir. 2019) (citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Deliberate indifference is a high legal standard that falls somewhere between mere negligence and actual malice. *Farmer*, 511 U.S. at 835–36. Acting with gross negligence is insufficient to satisfy the deliberate indifference standard. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Instead, to "show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo*, 935 F.3d at 786 (cleaned up).

    1.    <u>Defendant William Aurich</u>

Plaintiff's Amended Complaint makes three allegations relative to Defendant Aurich: (1) "Defendant William Aurich is the Facility Medical Director at [CBCC]. Who at the time of the

incident discussed herein [sic] this complaint, was the doctor who violated plaintiff[']s constitutional right[,]" Dkt. 20 ¶ 4; (2) "Defendant William Aurich . . . is legally responsible for the operations of clinical health services at [CBCC,]" *id.* at ¶ 50; and (3) "On 7/19/20 plaintiff declared a medical emergency which Defendant Wei Weller responded to.  She took my vitals as I explained I'm dealing with a sickle cell crisis.  She asked have I taken IBU, I explained Defendant William Aurich's instructions, which should be in my medical chart.  She explained he's not here . . . [,]" *id.* at ¶ 57.

      These allegations, taken together, are insufficient to sustain Plaintiff's § 1983 claim against Defendant Aurich for violations of the Eighth Amendment.  The first provides only that Defendant Aurich violated Plaintiff's constitutional rights, and is entirely conclusory.  Plaintiff must provide more than conclusory allegations; he must set forth specific, plausible facts to support his claim.  *Iqbal*, 556 U.S. at 678–83.  This statement, however, contains no factual content from which the Court can plausibly infer that Defendant Aurich is liable for the constitutional violation alleged.

      Plaintiff's second allegation against Defendant Aurich is likewise insufficient to sustain his claim.  It alleges only that Defendant Aurich is responsible for the operations of CBCC.  It therefore appears to contend that Defendant Aurich is liable for the alleged Eighth Amendment violations of his subordinates under a theory of supervisory liability.  While there is no vicarious liability under § 1983, *OSU Student All.*, 699 F.3d at 1069, a supervisor can be liable for the constitutional violations of his subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor*, 880 F.2d at 1045; *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the

REPORT AND RECOMMENDATION - 9

constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.") (cleaned up)).  Plaintiff's allegations against Defendant Aurich are insufficient for the Court to find Defendant Aurich potentially liable on either ground.

The Ninth Circuit's ruling in *Starr* is instructive. In that case, the plaintiff, an inmate at Los Angeles County Jail, was physically attacked by inmates and deputy sheriffs.  *Starr*, 652 F.3d at 1204.  The plaintiff sued the Los Angeles County Sheriff, as well as the deputies involved in the attack, arguing the conditions of his confinement violated the Eighth and Fourteenth Amendments.  *Id*.  The plaintiff contended that even though the sheriff was not personally involved in the attack, he was nonetheless "liable in his individual capacity because he knew or should have known about the dangers in the Los Angeles County Jail, and that he was deliberately indifferent to those dangers." *Id*. at 1204–05.  The Ninth Circuit agreed, finding the plaintiff had pleaded sufficient facts to plausibly conclude that the sheriff had "knowledge of" and had "acquiesced in" the unconstitutional conduct of his subordinates. *Id*. at 1207.  In so holding, the court pointed to the fact that the plaintiff's complaint recounted in detail numerous specific incidents where the sheriff was made aware of inmate deaths and injuries and failed to take any action to prevent them.  *Id*. at 1216.

Here, unlike in *Starr*, Plaintiff's Amended Complaint contains no factual allegations indicating Defendant Aurich (1) had knowledge of either the alleged Eighth Amendment violations at issue in this lawsuit or of prior Eighth Amendment violations, and (2) failed to act to prevent them.  Similarly, it contains no allegations indicating Defendant Aurich participated in or directed the violations alleged by Plaintiff.  To the contrary, Plaintiff indicates that when Defendant Aurich was made aware of Plaintiff's condition and his use of oxycodone to treat his

REPORT AND RECOMMENDATION - 10

acute sickle cell pain crises, Defendant Aurich prescribed Plaintiff the medication. Dkt. 33 at 7. This does not support finding Defendant Aurich personally culpable under a theory of supervisory liability.

Finally, Plaintiff's third allegation against Defendant Aurich does not appear to allege misconduct by Defendant Aurich at all. Instead, it alleges misconduct by Defendant Weller and in no way indicates Defendant Aurich caused, participated in, or contributed to the incident it recounts.[5] Further, by referencing "Defendant William Aurich's instructions, which should be in [Plaintiff's] medical chart," Dkt. 20 ¶ 57, the allegation seemingly implies that Defendant Aurich actually worked to assist Plaintiff in obtaining his medication, not that he wrongfully withheld it from Plaintiff.

Given this, the Court finds that Plaintiff has pleaded insufficient facts to establish a plausible claim for relief against Defendant Aurich for violations of Plaintiff's Eighth Amendment rights.

      2.    <u>Defendant Eric Nelson</u>

Plaintiff's Amended Complaint makes two allegations relative to Defendant Nelson: (1) "Defendant Eric Nelson is the Advanced Registered Nurse Practitioner at [CBCC] who at the time of the incident discussed herein [sic] this complaint was the Practitioner whom [sic] violated plaintiff[']s constitutional right[,]" Dkt. 20 ¶ 8; and (2) "Defendant Eric Nelson . . . is duly authorized by law or rule in the state of Washington to prescribe drugs[,]" *id.* at ¶ 52.

These allegations likewise fail to state a plausible § 1983 claim against Defendant Nelson for violations of the Eighth Amendment. Like Plaintiff's first allegation against Defendant

---

[5] Plaintiff's Amended Complaint states that Defendant Aurich was not at CBCC at the time of this incident. Dkt. 20 ¶ 57. While it is unclear, Plaintiff may construe Defendant Aurich's absence as wrongful. This is insufficient to support liability under the circumstances.

REPORT AND RECOMMENDATION - 11

Aurich, his first allegation against Defendant Nelson is entirely conclusory and provides no facts supporting its assertion. Further, while Plaintiff's second allegation contends Defendant Nelson is authorized to prescribe medication in Washington, Plaintiff offers no facts that support finding Defendant Nelson wrongfully failed to prescribe medication to Plaintiff. Indeed, Plaintiff does not contend that Defendant Nelson was involved in any of the incidents recounted in the Amended Complaint, nor does he contend Defendant Nelson was responsible for Plaintiff's care and deliberately indifferent to Plaintiff's medical needs.

Plaintiff argues that nurses at CBCC cannot administer medications without a provider prescription and contends that because Defendant Nelson is authorized to prescribe medication and failed to prescribe Plaintiff oxycodone, he caused the constitutional deprivations at issue here.[6] Dkt. 33 at 6–7. This argument is unpersuasive. First, Plaintiff supports it by relying on the letter from the DOC's Chief Nursing Officer, *id.* at 7, which provides that CBCC nurses "cannot administer medications without an order from the provider[,]" *id.* at 13. But the Court has declined to consider this letter in ruling on Defendants' Motion. Second, even if the Court were to consider the letter, the allegations in Plaintiff's Amended Complaint do not support finding that Defendant Nelson violated the Eighth Amendment by failing to prescribe Plaintiff oxycodone.

While a government official's failure to act can result in a constitutional deprivation for the purposes of a § 1983 claim, *Lacey*, 693 F.3d at 915, Plaintiff must do more than broadly allege that Defendant Nelson has the authority to prescribe medication and failed to do so, to

---

[6] While Plaintiff does not allege Defendant Aurich has the authority to prescribe medication in his Amended Complaint, he makes the same argument relative to Defendant Aurich in his Opposition. *See* Dkt. 33 at 6–7. Even if Plaintiff had alleged as much about Defendant Aurich in the Amended Complaint, his argument would still fail for the same reasons that it fails against Defendant Nelson, as explained herein.

REPORT AND RECOMMENDATION - 12

support finding him liable on this ground under the Eighth Amendment. Instead, Plaintiff must allege facts indicating that Defendant Nelson was deliberately indifferent to Plaintiff's medical needs. *Edmo*, 935 F.3d at 785–86. A prison official is not deliberately indifferent for the purposes of the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety," meaning the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Plaintiff's Amended Complaint does not allege any facts indicating that Defendant Nelson knew Plaintiff might experience pain if he did not receive oxycodone or that Defendant Nelson chose to disregard that possibility. While Plaintiff argues the medical report prepared by SKCPH put CBCC on notice of his condition and current list of medications, Dkt. 33 at 7, this does not demonstrate that Defendant Nelson was himself aware of Plaintiff's condition or of the incidences of acute sickle cell pain alleged by Plaintiff in his Amended Complaint. It likewise does not support finding that Defendant Nelson chose to disregard Plaintiff's condition and pain.

The Court therefore finds that Plaintiff has pleaded insufficient facts to establish a plausible claim against Defendant Nelson for violations of the Eighth Amendment.

### 3. CBCC's Medical Care System

In opposing Defendants' Motion, Plaintiff argues that he is challenging the prison's "medical care system as a whole, and not just the care or lack of care [he] received in response to a particular medical need." Dkt. 33 at 7. In this lawsuit, however, Plaintiff is seeking to hold Defendants Aurich and Nelson (among others) individually liable under § 1983 for violations of the Eighth Amendment. Plaintiff has cited no authority indicating that prison officials may be held individually liable for a prison system's systemic failings. Similarly, he has failed to plead

facts from which the Court can conclude that CBCC's medical system as a whole violates the Eighth Amendment. Even assuming he had, however, the alleged systemic failings of CBCC's medical care system would not support maintaining individual claims against Defendants Aurich and Nelson. In order to establish individual liability under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff's Amended Complaint contains no facts that indicate either Defendant Aurich or Defendant Nelson are individually responsible for the prison's medical care system as a whole such that they should be held personally liable for its failings. While Plaintiff contends Defendant Aurich is "legally responsible for the operations of clinical health services at [CBCC,]" Dkt. 20 ¶ 50, this statement is not supported by factual content and is therefore insufficient to establish individual liability.

In sum, Plaintiff's Amended Complaint fails to plead sufficient facts to establish a plausible § 1983 claim against Defendants Aurich and Nelson for violations of Plaintiff's Eighth Amendment rights. Defendants' Motion should be granted.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Motion for Judgment on the Pleadings, Dkt. 27, should be GRANTED, and Defendants Aurich and Nelson should be dismissed from this case without prejudice. Further, because the Court recommends dismissing Defendants Aurich and Nelson, Plaintiff's pending Motion for Partial Summary Judgment against Defendants Aurich and Nelson, Dkt. 46, should be denied as moot. A proposed order accompanies this Report and Recommendation.

/ / /

/ / /

V. **OBJECTIONS**

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 17, 2021**.

Dated this 23rd day of November, 2021.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15