UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON R. SULLIVAN,

        Plaintiff,

v.

WILLIAM AURICH et al.,

        Defendant.

Case No. C21-5433-RSL-SKV

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff is a state prisoner who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. At all times relevant to this litigation, Plaintiff was confined at Clallam Bay Corrections Center ("CBCC"). *See* Dkt. 20 ¶ 3. Plaintiff has sickle cell anemia and suffers from acute sickle cell pain crises, which he has historically treated with oxycodone. *See id.* at ¶¶ 18, 30. Shortly after being transferred to CBCC, Plaintiff suffered an acute pain crisis, but was denied oxycodone because it had not yet been prescribed to him by a CBCC medical provider. *Id.* at ¶¶ 27–32; Dkt. 99 ¶¶ 10–11, 15–16. As a result, Plaintiff's pain crisis continued for several days without the medication. Dkt. 20 ¶¶ 27–49. While Plaintiff was subsequently prescribed oxycodone, *see* Dkt. 99 ¶ 25, he experienced two additional acute pain crises during

1  which he alleges he did not receive the medication in accordance with his prescription, Dkt. 20
2  ¶¶ 62–63.
3      On June 9, 2021, Plaintiff filed this lawsuit against several CBCC medical and
4  correctional employees, alleging their refusal to provide him with oxycodone during his acute
5  sickle cell pain crises violated the Eighth Amendment's prohibition against cruel and unusual
6  punishment. *See* Dkt. 1-1. After answering Plaintiff's Amended Complaint, Defendants
7  William Aurich and Eric Nelson filed a Motion for Judgment on the Pleadings, alleging
8  Plaintiff's Amended Complaint failed to state a plausible claim for relief against them and asking
9  the Court to dismiss them from this lawsuit. *See* Dkt. 27. On November 23, 2021, the
10 undersigned entered a Report and Recommendation recommending granting Defendants'
11 Motion, Dkt. 67, and on November 18, 2022, the Court adopted the Report and Recommendation
12 and dismissed Plaintiff's claims against Defendants Aurich and Nelson, Dkt. 86.
13     On February 21, 2023, the remaining Defendants filed the present Motion for Summary
14 Judgment, Dkt. 97, alleging summary judgment is proper because Plaintiff has failed to
15 demonstrate Defendants are liable under § 1983 for violations of the Eighth Amendment.
16 Plaintiff did not file an opposition to Defendants' Motion. Having thoroughly considered the
17 briefing and the relevant record, the Court finds that Defendants' Motion, Dkt. 97, should be
18 GRANTED for the reasons explained herein.
19              II.    FACTUAL BACKGROUND
20     Plaintiff was taken into custody by the Washington State Department of Corrections
21 ("DOC") on or around March 24, 2020. *See* Dkt. 20 ¶ 17. At that time, Seattle & King County
22 Public Health prepared a medical report detailing Plaintiff's medical history and list of current
23

medications. *Id.* This report indicated that Plaintiff suffers from sickle cell anemia and takes oxycodone for pain management during acute sickle cell pain crises. *Id.* at ¶ 18; Dkt. 33-1 at 4.

On June 3, 2020, Plaintiff was transferred to CBCC. Dkt. 20 ¶ 24. That same day, a DOC employee conducted Plaintiff's medical intake screening and documented his sickle cell anemia. *Id.*; Dkt. 33-1 at 6. Defendant Julie Windle, an infection prevention nurse at CBCC, also conducted a medical chart review of Plaintiff's medical records in accordance with DOC Policy. Dkt. 105 ¶¶ 2, 4. In her capacity as an infection prevention nurse, Defendant Windle is required to review the medical records of every new patient who transfers to CBCC to evaluate their current tuberculosis status and the status of their preventative lab work and immunizations. *Id.* at ¶ 5. In conducting her review of Plaintiff's medical records, she included the notation "PRN"—meaning "when necessary"—in Plaintiff's chart to signify that following up "when necessary" was required for infection prevention purposes. *Id.* at ¶ 6; Dkt. 105-1 at 2.

On June 5, 2020, Plaintiff experienced an acute sickle cell pain crisis and declared a medical emergency.[1] *See* Dkt. 20 ¶ 27–28; Dkt. 99 ¶ 4. Defendant Julia Keegan, a nurse at CBCC, was called to respond. Dkt. 99 ¶¶ 2, 4. When Defendant Keegan arrived, Plaintiff was "alert and oriented, ambulatory, and standing at his cell door." *Id.* at ¶ 4. He was behaving aggressively. *Id.* Plaintiff asked Defendant Keegan for oxycodone, a narcotic pain medication. *Id.* at ¶ 5. Defendant Keegan asked Plaintiff why he needed oxycodone, and he stated that he has sickle cell disease and had an order for it. *Id.* at ¶ 6. Defendant Keegan explained she would need to review Plaintiff's chart to confirm that he had an order for oxycodone, as she could not dispense the medication without a prescriber's order in place. *Id.* at ¶ 7. Plaintiff reiterated that

---

[1] The Amended Complaint alleges Plaintiff declared a medical emergency to Defendant Jerry Saunders on two occasions that day. Dkt. 20 ¶¶ 27–28. Defendant Saunders is a former corrections officer at CBCC. Dkt. 103 ¶ [2]. On the day in question, Defendant Saunders was out sick and not present at CBCC. *Id.* at ¶ [5]; Dkt. 101 ¶ 3; Dkt. 101-1 at 2, 6.

REPORT AND RECOMMENDATION - 3

he had an order for oxycodone, and when Defendant Keegan asked who had prescribed it, Plaintiff told her "Harborview." *Id.* at ¶ 10. Defendant Keegan informed Plaintiff that orders from Harborview would need to be reviewed by CBCC's healthcare provider and that Plaintiff would need to be seen in person before oxycodone could be prescribed to him. *Id.* at ¶ 11. She further informed him she would review his chart and return to him, and that if he did have an order for oxycodone, she would administer it to him as ordered by the healthcare provider. *Id.* at ¶¶ 11–12. Plaintiff appeared angry Defendant Keegan did not have oxycodone to immediately provide to him. *Id.* at ¶ 8. Defendant Keegan was unable to obtain Plaintiff's vital signs, as she feared for her safety. *Id.* at ¶¶ 8–9.

After reviewing Plaintiff's chart, Defendant Keegan called the on-call healthcare provider, Defendant Jackie Peterson, Dkt. 99 ¶ 13, who is employed by CBCC as a certified physician assistant, Dkt. 102 ¶ [2]. Defendant Keegan explained to Defendant Peterson that Plaintiff had sickle cell disease and was reporting that he needed oxycodone for pain management. Dkt. 99 ¶ 13. Defendant Keegan reviewed Plaintiff's chart with Defendant Peterson over the phone and relayed that Plaintiff was prescribed ibuprofen by a healthcare provider on March 24, 2020, and that the provider notes indicated that Plaintiff received ibuprofen that day, was reevaluated, and reported that his pain symptoms had improved. *Id.* at ¶¶ 13–14. Defendant Keegan further informed Defendant Peterson that Plaintiff was not prescribed ibuprofen again until almost two months later on May 20, 2020. *Id.* at ¶ 14. Defendant Peterson verbally ordered an increase in Plaintiff's ibuprofen prescription to better address his pain. Dkt. 102 ¶ [4]. Defendant Keegan did not find an order for oxycodone in Plaintiff's chart. Dkt. 99 ¶ 15.

REPORT AND RECOMMENDATION - 4

      Defendant Keegan then returned to Plaintiff's cell and informed him that she had orders for ibuprofen, but there were no orders for oxycodone in his chart, and that Plaintiff would need to be evaluated in person before orders for oxycodone could be written. Dkt. 99 ¶ 16. Plaintiff was angry with this response, and Defendant Keegan was again unable to obtain his vital signs due to his level of agitation. *Id.* at ¶ 17. Throughout the encounter, Plaintiff remained "alert, oriented, answered questions angrily, but appropriately[,]" and was "ambulatory." *Id.* Defendant Keegan "could see rise and fall from his chest during inspiration and expiration." *Id.*

      The next day, on June 6, 2020, Plaintiff declared a medical emergency[2] to Defendant Shawn Clay, a corrections officer at CBCC. Dkt. 98 ¶¶ [2], [5]. Defendant Clay immediately contacted his supervisor, and Defendant Keegan arrived within ten minutes to respond to the emergency. *Id.* at ¶ [5]. Defendant Clay escorted Defendant Keegan to Plaintiff's cell. *Id.*

      Plaintiff expressed to Defendant Keegan that he was still experiencing sickle cell pain and wanted oxycodone. Dkt. 99 ¶ 18. Defendant Keegan advised Plaintiff that she still did not have orders for oxycodone and that he should continue taking ibuprofen as prescribed. *Id.* Defendant Keegan asked Plaintiff how much ibuprofen he had taken that day and he said he did not know. *Id.* Defendant Keegan asked to see the packet of ibuprofen that had been given to Plaintiff. *Id.* It contained fourteen tablets of ibuprofen and had been prescribed to Plaintiff before he entered CBCC. *Id.* Defendant Keegan asked Plaintiff if he had signed up for sick call to see a healthcare provider, and Plaintiff reported that he had. *Id.* Plaintiff was agitated and

---

[2] Plaintiff alleges he asked Defendant Clay to speak with the shift sergeant about Plaintiff's medical emergency from the prior day and contends he declared a medical emergency to Defendant Clay at the same time. Dkt. 20 ¶ 38. Defendant Clay does not recall this. Dkt. 98 ¶ [4]. Defendant Clay does recall Plaintiff speaking with him about filing a grievance against medical staff members, but does not recall Plaintiff declaring a medical emergency during that conversation. *Id.* Defendant Clay provided Plaintiff with a grievance form. *Id.*

REPORT AND RECOMMENDATION - 5

angry throughout the encounter and walked away from his cell door before finishing his conversation with Defendant Keegan or allowing her to further assess him. *Id.*

Plaintiff was evaluated by Dr. William Aurich, CBCC's medical director, on June 9, 2020.[3] *See* Dkt. 99 ¶ 19; Dkt. 99-1 at 8. Dr. Aurich agreed to write orders for oxycodone "as needed in the future" for Plaintiff's sickle cell pain. Dkt. 99 ¶ 21; Dkt. 99-1 at 8. Because Plaintiff's sickle cell pain had resolved as of June 9, 2020, Dr. Aurich did not write orders for oxycodone at that time. Dkt. 99 ¶ 22; Dkt. 99-1 at 8. Dr. Aurich further advised Plaintiff that he could stop taking ibuprofen, as he was currently not experiencing pain.[4] Dkt. 99 ¶ 22; Dkt. 99-1 at 8.

On July 19, 2020,[5] Plaintiff declared a medical emergency because he was "not feeling well/in pain and wanted some pain medication." Dkt. 104 ¶ [4]. Defendant Wei Weller, a registered nurse with CBCC, responded. *Id.* at ¶¶ [2], [4]. Prior to doing so, Defendant Weller checked Plaintiff's Medication Administration Record, which indicated Plaintiff had a May 20, 2020 order for ibuprofen that he had never refilled, so she brought ibuprofen with her to Plaintiff's cell. *Id.* at ¶ [5]. Defendant Weller did not understand at the time that Plaintiff was prescribed any narcotic pain medication. *Id.* Upon arriving at Plaintiff's cell, Defendant Weller

---

[3] Plaintiff alleges Defendant Keegan told him he would be seen by a doctor on Monday, June 8, 2020, but he was not. Dkt. 20 ¶ 49. Defendant Keegan explains that sick call takes place on Mondays, as well as on other days of the week. Dkt. 99 ¶ 19. While she does not know why Plaintiff was not evaluated by a physician on Monday, June 8, 2020, and instead was evaluated on Tuesday, June 9, 2020, she posits it may have been because Dr. Aurich was not in the clinic on June 8, 2020. *Id.* Defendant Keegan was not aware on June 6, 2020, when she spoke with Plaintiff, that Dr. Aurich would be out on June 8, 2020. *Id.* Had she known this, she would have advised Plaintiff that he would be evaluated by a provider on June 9, 2020. *Id.*

[4] The Amended Complaint alleges "DOC policy 610.040 Health Screenings was not complied with causing plaintiff to suffer sickle cell crisis pain in June 2020." Dkt. 20 ¶ 56. Because no defendants are implicated in this allegation, the Court does not consider it herein.

[5] The Amended Complaint alleges that on July 20, 2020, Plaintiff asked a non-defendant officer "to contact medical about PRN medicine[,]" and that "[m]edical never came." Dkt. 20 ¶ 60. Because no defendants are implicated in this allegation, the Court does not consider it herein.

REPORT AND RECOMMENDATION - 6

immediately took Plaintiff's vital signs and asked if he had taken ibuprofen for his pain. *Id.* at ¶ [6]. Plaintiff responded that it did not help and that he already had some in his cell. *Id.* Plaintiff then mentioned Dr. Aurich and Defendant Weller explained that Dr. Aurich was off that day. *Id.* Plaintiff asked for Defendant Weller's name, which she provided. *Id.* He then stated, "I think I'm done here." *Id.* Defendant Weller asked Plaintiff twice if he was sure, and he responded that he was. *Id.*

Following this encounter, Defendant Keegan went to see Plaintiff. Dkt. 99 ¶ 20. Plaintiff initially refused to see her and denied needing medical attention. *Id.* Defendant Keegan then asked to be escorted to Plaintiff's cell, and Plaintiff agreed to talk to her. *Id.* Defendant Keegan explained to Plaintiff that notes showed he was evaluated by Dr. Aurich on June 9, 2020, and that Dr. Aurich agreed to write orders for oxycodone "as needed in the future," but that currently there were no such orders in place. *Id.* at ¶ 21. Defendant Keegan told Plaintiff that she would call the on-call healthcare provider and obtain oxycodone orders, which she did. *Id.* at ¶ 22. She also took Plaintiff's vital signs. *Id.* at ¶ 24. Defendant Keegan then called Defendant Peterson, the on-call healthcare provider, and relayed Dr. Aurich's plan of care for Plaintiff. *Id.* at ¶ 25. Defendant Peterson provided verbal orders for oxycodone. *Id.*

On April 17, 2021, Plaintiff suffered an acute sickle cell pain crisis.[6] *See* Dkt. 20 ¶ 62; Dkt. 100 ¶ 4. Defendant Alvin Massenburg, a certified physician assistant employed by CBCC, prescribed Plaintiff "two tablets of 5 mg oxycodone by mouth twice per day for three days" based on his consideration of Plaintiff's symptoms. Dkt. 100 ¶ 4. On June 16, 2021, Plaintiff suffered another acute sickle cell pain crisis and Defendant Massenburg prescribed him "two

---

[6] The Amended Complaint alleges the pain crisis occurred on April 18-19, 2021, Dkt. 20 ¶ 62; however, Defendant Massenburg prescribed Plaintiff oxycodone on April 17, 2021, Dkt. 100 ¶ 4; Dkt. 100-1 at 2, indicating the crisis first occurred on that day.

REPORT AND RECOMMENDATION - 7

tablets of 5 mg of oxycodone by mouth once for that day only" based on his consideration of Plaintiff's symptoms. *Id.* at ¶ 5. Because Plaintiff did not receive additional oxycodone, he alleges he continued to suffer sickle cell pain. Dkt 20 ¶ 63.

### III. DISCUSSION

#### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citation omitted).

The non-moving party must present significant and probative evidence to support its claims or defenses. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. Neither will uncorroborated allegations and self-serving testimony create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Rather, the non-moving party must make a "sufficient showing on [each] essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. But where the non-moving party fails to properly

support an assertion of fact or fails to properly address the moving party's assertions of fact, the Court may accept the fact as undisputed. Fed. R. Civ. P. 56(e)(2). As such, the Court relies "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1278–79 (9th Cir. 1996) (cleaned up). The Court need not "comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). Further, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Instead, a plaintiff must "produce at least some 'significant probative evidence tending to support'" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (citation omitted).

Because Plaintiff failed to file an opposition to Defendants' Motion, the Court assumes the factual assertions set forth therein, as well as in the Motion's supporting materials, are undisputed.

B.  <u>Defendants' Motion for Summary Judgment</u>

All Defendants move the Court for an order granting summary judgment, alleging Plaintiff has failed to state a § 1983 claim against them for violations of the Eighth Amendment.

To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). There is no vicarious liability under § 1983, meaning government officials are only liable when their own actions cause a constitutional violation. *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A

REPORT AND RECOMMENDATION - 9

government official causes a constitutional violation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [the actor] is legally required to do that causes the deprivation of which complaint is made"; or (2) "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (citation omitted).

When a § 1983 lawsuit is predicated on violations of the Eighth Amendment, a plaintiff must allege facts sufficient to find that the defendant has deprived the plaintiff of his or her Eighth Amendment rights. A prisoner pursuing an Eighth Amendment claim alleging inadequate medical care by a prison official "must satisfy both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). First, the prisoner must demonstrate that he had a "serious medical need," and second, he must demonstrate that the prison official was deliberately indifferent to that need. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785–86 (9th Cir. 2019) (citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Deliberate indifference is a high legal standard that falls somewhere between mere negligence and actual malice. *Farmer*, 511 U.S. at 835–36. Acting with gross negligence is insufficient to satisfy the deliberate indifference standard. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Instead, deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, the deliberate indifference standard focuses on what

the defendant actually knew, not what he or she allegedly should have known. *Toguchi*, 391 at 1057; *see also Farmer*, 511 U.S. at 839.

Here, only the subjective component—i.e., whether Defendants acted with deliberate indifference to Plaintiff's serious medical need—is at issue. Dkt. 97 at 15.

### 1. Defendant Windle

Plaintiff alleges that, "[o]n 6/03/20 at 9:30am Defendant Julie Windle did a chain chart review. The Diagnosis/Plan/Rx of this primary encounter report has a PRN in the follow up section." Dkt. 20 ¶ 25. Plaintiff further states that he believes "PRN means 'as needed' meaning a medication is one that is administered only when asked for by the patient." *Id.* at ¶ 26. The Amended Complaint contains no further allegations against Defendant Windle.

These allegations do not demonstrate that Defendant Windle acted with deliberate indifference toward Plaintiff's serious medical need. Defendant Windle explains that on the date in question, she was only reviewing Plaintiff's medical records to evaluate his current tuberculosis status and the status of his preventative lab work and immunizations. Dkt. 105 ¶¶ 5–6. The PRN notation to which Plaintiff refers "was from an infection prevention stand point and in no way referenced any kind of medication orders." *Id.* at ¶ 6. Thus, Plaintiff has failed to establish that Defendant Windle knew of and deliberately disregarded Plaintiff's sickle cell disease, and his Eighth Amendment claim against her fails.

### 2. Defendant Saunders

Plaintiff contends that he declared two medical emergencies to Defendant Saunders on June 5, 2020, Dkt. 20 ¶¶ 27–28, and that Defendant Saunders was deliberately indifferent to Plaintiff's "serious medical needs by delaying and or denying [Plaintiff] medical treatment[,]" *id.* at ¶ 42. However, Defendant Saunders was out sick on June 5, 2020, and not present at CBCC.

Dkt. 103 ¶ [5]; Dkt. 101 ¶ 3; Dkt. 101-1 at 2, 6.  Accordingly, Plaintiff cannot demonstrate that Defendant Saunders participated in the alleged June 5, 2020 Eighth Amendment violation, and his claim against Defendant Saunders fails.

          3.      *Defendant Keegan*

Plaintiff seemingly alleges Defendant Keegan behaved with deliberate indifference by (1) failing to provide him with oxycodone during his acute sickle cell pain crisis on June 5-6, 2020; (2) failing to take his vitals during their interactions; and (3) telling Plaintiff he would be seen by a healthcare provider on June 8, 2020, when he was not seen until June 9, 2020.  Dkt. 20 ¶¶ 29–46, 49.  Plaintiff also implicates Defendant Keegan in Plaintiff's July 19, 2020 interaction with Defendant Weller, alleging Defendant Keegan told Plaintiff that Defendant Weller "had no idea of [his] medical condition" and explained to Plaintiff the process for getting his narcotic medication promptly.  *Id.* at ¶¶ 58–59.

The record indicates that Defendant Keegan did not provide Plaintiff with oxycodone on June 5 or June 6, 2020, because, despite contacting the on-call healthcare provider about Plaintiff's condition, she did not have orders for the medication and was therefore lawfully prohibited from dispensing it.  Dkt. 99 ¶¶ 11–18.  The record further indicates that on July 19, 2020, after Plaintiff's June 9, 2020 meeting with Dr. Aurich, Defendant Keegan contacted the on-call healthcare provider to obtain orders for oxycodone when Plaintiff was experiencing crisis pain.  *Id.* at ¶¶ 22–25.  Moreover, the record indicates that Defendant Keegan failed to take Plaintiff's vital signs during certain of her encounters with Plaintiff because Plaintiff was uncooperative and angry, and Defendant Keegan feared for her safety.  *Id.* at ¶¶ 9, 17–18.  Finally, the record indicates that Defendant Keegan told Plaintiff he would be seen by a healthcare provider on June 8, 2020, instead of June 9, 2020, in error.  *Id.* at ¶ 19.

These facts do not demonstrate that Defendant Keegan knew of and deliberately disregarded Plaintiff's serious medical need. To the contrary, they demonstrate that she promptly responded to his medical emergencies, contacted the on-call healthcare provider in relation to Plaintiff's requests for narcotic pain medication, and dispensed oxycodone to Plaintiff when she was lawfully able to do so. Nor does Defendant Keegan's failure to take Plaintiff's vital signs when she feared for her own safety, or mistake as to when Plaintiff would be seen by a healthcare provider, constitute deliberate indifference. Plaintiff has failed to state an Eighth Amendment claim against Defendant Keegan.

### 4.  *Defendant Peterson*

Plaintiff appears to allege that Defendant Peterson behaved with deliberate indifference by prescribing him ibuprofen instead of oxycodone during his June 5, 2020 pain crisis. Dkt. 20 ¶ 33. The record shows that on June 5, 2020, Defendant Peterson reviewed Plaintiff's case with Defendant Keegan, decided ibuprofen was the proper course of treatment for Plaintiff's sickle cell pain, and increased his ibuprofen dose to better address his pain. Dkt. 102 ¶¶ [4]–[6]; Dkt. 99 ¶¶ 13–14.

A difference of opinion between a prisoner patient and a prison provider over matters of expert medical judgment or a prescribed course of medical treatment fails to state an Eighth Amendment claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981); *see also Estelle*, 429 U.S. at 107. Plaintiff has failed to demonstrate that Defendant Peterson's decision to prescribe ibuprofen instead of oxycodone was anything more than a difference of opinion over Plaintiff's proper course of medical treatment. Plaintiff's Eighth Amendment claim against Defendant Peterson fails accordingly.

/ / /

### 5. *Defendant Clay*

Plaintiff contends he declared two medical emergencies to Defendant Clay on June 6, 2020, Dkt. 20 ¶¶ 38–39, and Defendant Clay behaved with deliberate indifference to Plaintiff's "serious medical needs by delaying and or denying [Plaintiff] medical treatment" by waiting "2 hours until med pass to allow plaintiff to be seen by medical. . . [,]" *id.* at ¶ 42. He further contends that he asked Defendant Clay to speak with the shift sergeant about Plaintiff's medical emergency from the prior day, but that this request was not accommodated. *Id.* at ¶¶ 38, 41. The record indicates, however, that when Plaintiff declared a medical emergency to Defendant Clay, Defendant Clay immediately contacted his supervisor, Defendant Keegan arrived within ten minutes of that contact, and Defendant Clay promptly escorted Defendant Keegan to Plaintiff's cell. Dkt. 98 ¶ [5]. The record further indicates that Plaintiff did not speak with Defendant Clay about contacting a shift sergeant, and instead spoke with him about filing a grievance against medical staff members. *Id.* at ¶ [4]. In response, Defendant Clay provided Plaintiff with a grievance form. *Id.*

Defendant Clay's conduct in immediately reporting Plaintiff's medical emergency and providing Plaintiff with the requested grievance form does not constitute deliberate indifference to Plaintiff's serious medical need. Plaintiff has failed to state an Eighth Amendment claim against Defendant Clay.

### 6. *Defendant Weller*

Plaintiff alleges Defendant Weller acted with deliberate indifference to Plaintiff's serious medical need by asking Plaintiff if he had taken ibuprofen during his July 19, 2020 sickle cell pain crisis, failing to provide him with oxycodone, and informing him that Dr. Aurich was not present at CBCC when Plaintiff attempted to explain Dr. Aurich's plan of care for Plaintiff. Dkt.

20 ¶ 57. The record indicates, however, that Defendant Weller did not facilitate the provision of oxycodone to Plaintiff because she was unaware that Plaintiff was eligible to receive narcotic pain medication, as there were no orders for it in his Medication Administration Record. Dkt. 104 ¶ [5].

Because the deliberate indifference standard focuses on what a defendant knows, and not what she should have known, *Toguchi*, 391 F.3d at 1057; *see also Farmer*, 511 U.S. at 839, Defendant Weller's failure to provide Plaintiff with oxycodone due to her lack of knowledge about its availability to him does not constitute deliberate indifference. Plaintiff's Eighth Amendment claim against her fails.

### 7. *Defendant Massenburg*

Plaintiff alleges Defendant Massenburg acted with deliberate indifference toward Plaintiff's serious medical need by prescribing Plaintiff oxycodone in doses less than Plaintiff considered necessary to address his sickle cell pain. *See* Dkt. 20 ¶¶ 62–63. Regarding the incidents in question, Defendant Massenburg prescribed oxycodone to Plaintiff in an amount he believed was appropriate based on his consideration of Plaintiff's symptoms as informed by his training and experience. Dkt. 100 ¶¶ 4–5. Because a difference of opinion over the proper course of medical treatment does not state an Eighth Amendment claim, *Sanchez*, 891 F.2d at 242, Plaintiff's claim against Defendant Massenburg fails.

### C. Qualified Immunity

Defendants assert their entitlement to qualified immunity in relation to Plaintiff's claims. Having found an absence of evidence to support a constitutional violation, the Court need not and therefore does not conduct a qualified immunity analysis herein.

/ / /

IV.   CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Motion for Summary Judgment, Dkt. 97, should be GRANTED, and this case should be dismissed. A proposed order accompanies this Report and Recommendation.

V.   OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 12, 2023**.

Dated this 21st day of April, 2023.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge